**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

James E. Brown,                           )    No. CV-11-424-PHX-LOA
                                          )
            Plaintiff,                    )    **ORDER**
                                          )
vs.                                       )
                                          )
Patrick R. Donahoe, Postmaster General,)
United States Postal Service,             )
                                          )
            Defendant.                    )
_____)

        This action comes before the Court on Defendant Postmaster General Patrick R. Donahoe's Motion for Summary Judgment, requesting the entry of summary judgment on Plaintiff's *pro se* Second Amended Complaint. (Docs. 16, 42)  After considering the parties' briefings, statements of facts, including Plaintiff's Amended Statement of Facts,[1] and the relevant legal authorities, the Court will grant the Motion, enter judgment in favor of Defendant, and terminate this action.

**I. Background**

        Plaintiff is a letter carrier employed by the United States Postal Service ("Postal Service"). This action arose between 2007 and 2008 when a number of postal routes were converted from "drive-and-dismount" delivery routes, which are primarily driven, to "park-

---

[1] On September 16, 2013, Plaintiff was ordered to file an Amended Statement of Facts on or before September 30, 2013, that fully complied with LRCiv 56.1. (Doc. 50) While he filed a timely Amended Statement of Facts, Plaintiff's Amended Statement of Facts fails to comply with LRCiv 56.1 and establish a genuine dispute of material fact. The significant deficiencies of Plaintiff's Amended Statement of Facts are discussed on pages 12-13.

1  and-loop," or "park-point" routes, which require more walking to deliver and pick up mail.

2  In a "drive-and-dismount" route, also called an "across-the-curb" delivery or "hop and stop,"

3  the letter carrier drives a postal vehicle to each mailbox, takes a step or two across the curb,

4  places the mail into the mailbox, returns to the postal vehicle, and then drives to the next

5  mailbox. (Doc. 43, Defendant's Statement of Facts ("DSOF") ¶ 5)  In a park-and-loop route,

6  a postal carrier drives to a designated point, parks the postal vehicle, fills his or her mail

7  satchel, and walks from mailbox to mailbox, looping the street back to the postal vehicle.

8  (*Id.*)

9      The Postal Service converted many of its routes to park-and-loop delivery as part of

10  its effort to create more "green routes," which included more park-and-loop routes and other

11  routes where carriers walked from a postal station and did not use a postal vehicle at all.

12  (DSOF, ¶ 16) Converting to green routes reduces fuel usage, wear and tear on postal

13  vehicles, and minimizes the risk of injury to postal letter carriers by repeated mounting and

14  dismounting of their postal vehicles. (*Id.*)

15      Plaintiff began working as a letter carrier for the Postal Service in approximately

16  1999. (*Id.* at ¶ 1)  Between September 2007 and February 2008, Plaintiff took a leave of

17  absence from the Postal Service to undergo surgery on both his feet for *plantar fasciitis*,[2] and

18  he did not return to work until February 2008. (DSOF, ¶¶ 4, 12)  During the time Plaintiff

19  was off work for his surgeries and post-surgery recovery, the Postal Service changed the

20  method of delivery for several postal routes, including Route 3278, pursuant to the Postal

21  Service's effort to create more green routes. (*Id.* at ¶ 13)  Specifically, Plaintiff's old route,

22  Route 3278, was changed from a drive-and-dismount route, which included one and one-half

23  hours of park and loop, to a full park-and-loop route. (DSOF ¶ 14)  In or about June 2008,

24  Plaintiff requested that his route be changed from a park-and-loop route, back to a drive-and-

25

26      [2] *Plantar fasciitis* is the "inflammation involving the plantar fascia especially in the
27  area of its attachment to the calcaneus and causing pain under the heel in walking and
running." *See* www.merriam-webster.com (last viewed on October 15, 2013)

28

1    dismount route as an accommodation for his medical walking restriction on the limited

2    number of hours he should walk each day. To accommodate Plaintiff's maximum two-hour-

3    walking medical restriction, the Postal Service scheduled Plaintiff to carry the mail for part

4    of his Route 3278 in which he would walk for two hours, then hand off the remainder of

5    Route 3278 to other carriers to finish, and then move to another route, using both mounted

6    and drive-and-dismount deliveries. (DSOF ¶¶ 22-24, 29-32)  During this period of walking

7    a maximum of two hours on Route 3278, handing off Route 3278 to another postal employee,

8    and then delivering mail on an auxiliary route, Plaintiff was not required to do anything that

9    was outside of his medical restrictions. (*Id.* at ¶ 45) Plaintiff worked Route 3278 as an

10   accommodated park-and-loop route within his restrictions for a year to a year-and-a-half. (*Id.*

11   at ¶ 47)

12        Plaintiff did not lose his job or suffer any reduction in pay or other postal benefit as

13   a result of his disability or the Postal Service providing him this medical accommodation.

14   (*Id.* at ¶ 46)

15        Although this adjusted mail delivery schedule satisfied his medical restrictions,

16   Plaintiff, who remains employed by the Postal Service to this day, was dissatisfied with the

17   Postal Service's accommodation and requested that his original route be converted back to

18   an entire drive-and-dismount route. After the denial of his request to change the route back

19   to drive-and-dismount route, Plaintiff filed a disability discrimination claim against the Postal

20   Service with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful

21   disability discrimination because the Postal Service failed to provide him a reasonable

22   accommodation. (Doc. 16 at 2)

23        For purposes of summary judgment, the Postal Service does not dispute Plaintiff is

24   disabled within the meaning of the Rehabilitation Act.

25        **A. Plaintiff's Allegations**

26        On March 4, 2011, Plaintiff, representing himself, filed a Complaint, and an Amended

27   Complaint, and then a second Ammended [sic] Complaint ("SAC"). (Docs. 1, 9, 16) While

28

1  certainly not a model of pleading clarity,[3] *pro se* Plaintiff's SAC alleged the Postal Service

2  discriminated against Plaintiff "on the basis of [Plaintiff] being injured on the job[.]" (Doc.

3  16 at 1) Citing 5 C.F.R. 353.301(d) and Section 13 of the "Reasonable Accomodation [sic]

4  Handbook," the SAC does not expressly allege a violation of a specific federal act or federal

5  statute. (*Id.* at 2) (bolding and all capital letters omitted).

6       The parties' Proposed Case Management Plan clarifies that Plaintiff's lawsuit is

7  predicated upon the Postal Service's alleged violation of the Rehabilitation Act of 1973, as

8  amended, with general references to 5 C.F.R. 353.301(d) and Section 13 of the Handbook.

9  (Doc. 22 at 5-8)  In his Statement of the Case, Plaintiff contends that "[s]hortly after

10 returning to work from a compensable work related injury[,] the Postal service made

11 accommodations to my bid assignment that were discriminative [sic] in nature, due to federal

12 laws and contractual agreements that they are bound by so as not to be discrimitive [sic]

13 when making accommodations." (*Id.* at 1-2)  Plaintiff claims that "[t]he only reason the

14 Postal Service was granted summary judgment on [his] EEO[C] claim was that everyone

15 throughout the process was employed by the Postal Service." (*Id.* at 2)   According to

16 Plaintiff, the Postal service "cause[d] much pain and suffering to the plaintiff which relief

17 is sought through the jury process." (*Id.*)

18       **B. the Postal Service's Contentions**

19       The Postal Service seeks summary judgment because Plaintiff cannot establish the

20 Postal Service failed to provide him a reasonable accommodation for his disability as he

21 "was given an accommodation that allowed him to work within his medical restriction and

22 resulted in no loss of pay" or other adverse employment action. (Doc. 43, DSOF ¶¶ 31, 45-

23

24 ─────────────────

25       [3] The Postal Service elected not to file a motion to dismiss Plaintiff's Amended
   Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6),
26 Fed.R.Civ.P.  Because Plaintiff's Motion for Leave to Proceed In Forma Pauperis, doc. 2,
   was denied by the then assigned District Judge, the initial Complaint and Amended
27 Complaint were never screened pursuant to 28 U.S.C. § 1915(e)(2) to determine if a plausible
   claim was alleged. Defendant's Motion for More Definite Statement, doc. 15, was denied as
28 moot when the prior Judge allowed Plaintiff's SAC to stand. (Doc. 17)

46) "Plaintiff worked with this accommodation for between and year and a year-and-a-half." *Id.* (citing DSOF ¶ 47) According to the Postal Service, Plaintiff's claim fails "because he was provided not only suitable work but actually continued to work his original route to the extent his limitations permitted." *Id.* The Postal Service points out that "Plaintiff continued to perform his original function, completely within his limitations." *Id.* The Postal Service claims "[t]here is no dispute that the Postal Service provided Plaintiff with a job within his medical restrictions." *Id.* at 5 (citing DSOF ¶¶ 31, 45, 46). "While plaintiff may not like the accommodation, his satisfaction is not guaranteed by the Rehabilitation Act." (Doc. 42 at 5) The Postal Service argues it is entitled to summary judgement as a matter of law. (*Id.*) The Court agrees.

**II. Summary Judgment**

A district court must grant summary judgment if the pleadings and supporting documents,  viewed in the light most favorable to the nonmoving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323.

The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but "[m]ust come forward with 'specific facts showing that

there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting former Rule 56(e),Fed.R.Civ.P.) (emphasis in original). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). In evaluating the evidence submitted by both parties, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the non-moving party. *T.W. Elec. Services v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir. 1987).

In *Anderson*, the Supreme Court explained that the summary judgment standard mirrors the standard for a directed verdict. *Anderson*, 477 U.S. at 250-52. The inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Put another way, summary judgment should be granted when the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in his favor. *Id.* at 252. The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient. *Id.*

The various provisions of Rule 56, Fed.R.Civ.P., "[m]ean, taken together, that whatever establishes a genuine issue of fact must *both* be in the district court file and set forth in the response." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001) (emphasis in original). "[A] district court is not required to comb the record to find some reason to deny a motion for summary judgment and that, if a party wishes the court to consider an affidavit for more than one issue, the party should bring that desire to the attention of the court." *Id.* at 1031 (internal quotation marks, bracket, and citation omitted); *see also Albrechtsen v. Board of Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles in' the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

1    In ruling on a motion for summary judgment, a district court is not permitted to weigh

2    the evidence, pass upon credibility, or speculate on the ultimate findings of fact. *Pepper &*

3    *Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (9th Cir. 1977).

4    **III. The Rehabilitation Act**

5    The Rehabilitation Act, 29 U.S.C. § 791 *et seq*., prohibits the Postal Service or any

6    other governmental agency from discriminating against its employees on the basis of a

7    disability. *Brown v. Potter*, 457 Fed.Appx. 668 (9th Cir. 2011); *Boyd v. United States Postal*

8    *Serv.*, 752 F.2d 410, 413 (9th Cir. 1985) ("[S]ection 501 is the exclusive remedy for

9    discrimination in employment by the Postal Service on the basis of handicap.").[4] "The

10   Rehabilitation Act requires that government[al] agencies reasonably accommodate an

11   employee's disability." *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000) (citing 29

12   U.S.C. § 794[5]; *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1176 (9th Cir. 1998)).

13   While the Americans with Disabilities Act ("ADA") is inapplicable to disability claims by

14   Postal Service employees, the liability standards are the same under each federal act. *See* 29

15   U.S.C. § 791(g); *Thompson v. Donahoe*, 2013 WL 3286196, at *9 (N.D. Cal. June 27, 2013)

16   ("The Rehabilitation Act incorporates the standards of substantive liability of the [ADA.]")

17

18   ────────────────

19   [4] Unlike the ADA, the definition of "discrimination" is not codified in the Rehabilitation Act. *See Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). "[S]ection

20   794(d) of the Rehabilitation Act, added in 1992, adopts the standards applied under the ADA to determine whether a violation of the former has occurred." *Id.* The Postal Service

21   regulations, promulgated under the authority of section 794(a), follow the ADA's model. *See*

22   39 C.F.R. § 255.5 (2003) (Postal Service regulation stating EEOC regulations contained in 29 C.F.R. part 1614 apply to employment with the Postal Service); 29 C.F.R. § 1614.203

23   (2003) (EEOC regulation adopting standards contained in regulations promulgated under the ADA at 29 C.F.R. part 1630); 29 C.F.R. §§ 1630.4-1630.13 (2003) (defining

24   "discrimination" by describing various acts).

25   [5] Title 29 U.S.C. § 794(a) provides in relevant part that "[n]o otherwise qualified

26   individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected

27   to discrimination under any program or activity conducted . . . by the United States Postal

28   Service. . . ."

(citing 42 U.S.C. § 12101 *et seq*; *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)). Thus, the case law construing the ADA generally pertains equally to claims under the Rehabilitation Act. *See Edwards v. Tacoma Public Schools*, 275 Fed.Appx. 629, 630 (9th Cir. 2008) ("[W]e examine cases construing claims under the [ADA] . . . as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts.") (citation and internal quotation marks omitted); *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citations omitted).

Under the Rehabilitation Act, the ADA, the Fair Housing Act,[6] and their various regulations, numerous kinds of disability discrimination are prohibited. The means of discrimination at issue in this case is the Postal Service's alleged failure to provide Plaintiff a reasonable accommodation in his employment. The Postal Service does not dispute that the failure to make a reasonable accommodation in the employment of a disabled postal employee is a form of prohibited discrimination. *See* 29 C.F.R. § 1630.9(a) ("It is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business."). If, however, a disabled employee "rejects a reasonable accommodation," the employee will not be considered a qualified individual with a disability. 29 C.F.R. 1630.9(d); *accord Reza v. International Game Technology*, 351 Fed.Appx. 188, (9th Cir. 2009) (After employee rejected a reasonable accommodation, she

---

[6] "The Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended by the Fair Housing Amendments Act of 1988, prohibits discrimination 'against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.'" *Hollis v. Chestnut Bend Homeowners Ass'n*, 2013 WL 5372362, at *11 (M.D. Tenn. Sept. 24, 2013) (quoting 42 U.S.C. § 3604(f)(2)). "The FHA is a broad mandate to eliminate discrimination against [the disabled] and equalize housing opportunities for disabled individuals." *Jafri v. Chandler LLC*, 2013 WL 5513238, at *4 (N.D. Ill. Oct. 4, 2013) (citation and internal quotation marks omitted).

1   was no longer a qualified individual under the ADA.) (citing 29 C.F.R. § 1630.9(d))
2   (footnote omitted).

3        An employee bringing a reasonable-accommodation claim under the Rehabilitation
4   Act must first establish a *prima facie* case. To establish a *prima facie* case that the Postal
5   Service failed to accommodate an employee's disability, a plaintiff must first demonstrate:
6   "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to
7   perform the essential functions of the job with reasonable accommodation; and (3) he
8   suffered an adverse employment action because of his disability." *Allen v. Pac. Bell*, 348
9   F.3d 1113, 1114 (9th Cir. 2003) (citation omitted); *see also Samper v. Providence St. Vincent*
10  *Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Brown v. Potter*, 457 Fed.Appx. 668, 669-70
11  (9th Cir. 2011) (quoting *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)
12  (citation omitted); *Peebles v. Potter*, 354 F.3d 761 (8th Cir. 2004) (summary judgment in
13  favor of Postal Service affirmed on former letter carrier's claim of failure to accommodate
14  his disability by refusing to place him in a light-duty position).

15       When an employee alleges a failure to accommodate his disability under the
16  Rehabilitation Act, the burden is on the employee to prove that he is a qualified individual
17  with a disability, and "with or without reasonable accommodation, [he could] perform the
18  essential functions of [his] job." *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir.
19  1993). If an accommodation of a plaintiff as a qualified individual with a disability is
20  required to enable that plaintiff to perform the essential functions of the job, the plaintiff
21  must provide evidence sufficient to make at least a facial showing that a reasonable
22  accommodation is possible.[7] *Id.* at 740.

23

24  _____

25       [7] Under the Rehabilitation Act, a "qualified individual" is an individual with a
    disability "who, with or without reasonable accommodation, can perform the essential
26  functions of [the] position." 29 C.F.R. § 1630.2(m). "Essential functions are the 'fundamental
    job duties of the employment position . . . not including the marginal functions of the
27  position.'" *Quinones v. Potter*, 661 F.Supp.2d 1105, 1122 (D. Ariz. 2009) (quoting  29
    C.F.R. § 1630.2(n)(1)).
28

1       The Rehabilitation Act requires the Postal Service to "reasonably accommodate an

2   employee's disability" unless the accommodation would impose an undue hardship on the

3   Postal Service. *Aurigue v. Potter*, 45 Fed.Appx. 692, 693 (9th Cir. 2002) (citing 29 U.S.C.

4   § 794; *McLean*, 222 F.3d at 1153); *see also* 42 U.S.C. § 12112(b)(5) (defining discrimination

5   as including "not making reasonable accommodations to the known physical or mental

6   limitations of an otherwise qualified individual with a disability . . . ."); 29 C.F.R. § 1630.9.

7   In determining whether the Postal Service violated its duty to provide a reasonable

8   accommodation under the Rehabilitation Act, the standards under Title I of the ADA apply.

9   29 U.S.C. § 794(d); *McClean*, 222 F.3d at 1153.

10      "Reasonable accommodations include 'reassignment to a vacant position,' as well as

11  modifications made to the work environment and schedule of the employee's current job."

12  *Brown*, 457 Fed.Appx. at 670 (citing 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2( o)(1)-(2)).

13  "A necessary component of reasonable accommodation is an interactive, open, and ongoing

14  process of dialogue between the employer and employee to 'identify the precise limitations

15  resulting from the disability and potential reasonable accommodations that could overcome

16  those limitations.'" *Id*. (citations omitted); *see also Livingston v. Fred Meyer Stores, Inc*., 388

17  Fed.Appx. 738, 741 (9th Cir. 2010). "This interactive process requires: (1) direct

18  communication between the employer and employee to explore in good faith the possible

19  accommodations; (2) consideration of the employee's request; and (3) offering an

20  accommodation that is reasonable and effective." *EEOC v. UPS Supply Chain Solutions*, 620

21  F.3d 1103, 1110 (9th Cir. 2010) (citation and internal quotation marks omitted).

22  "Determining whether a proposed accommodation . . . is reasonable, including whether it

23  imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry."

24  *Nunes v. Wal–Mart Stores, Inc*., 164 F.3d 1243, 1247 (9th Cir. 1999) (citation omitted). An

25  employer is not obligated, however, to provide an employee the accommodation he requests

26  or prefers, the employer need only provide some reasonable accommodation." *Id*. at 1110-

27  11; *see also Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1016 (7th Cir. 1996)

28  ("The ADA does not obligate an employer to provide a disabled employee every

1   accommodation on his wish list."). If the accommodation provided is reasonable, "the inquiry

2   is over." *Sharpe v. American Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995).

3   "[D]iscrimination laws are 'not intended as a vehicle for general judicial review of business

4   decisions.'" *Id*. (quoting *Douglas v. Anderson*, 656 F.2d 528, 535 (9th Cir. 1981)).

5   **IV. Discussion**

6          Plaintiff's Response to Defendant's Motion for Summary Judgment does not articulate

7   any prohibited basis that Plaintiff suffered employment discrimination because of his

8   disability. (Doc. 48) Plaintiff refers to 5 C.F.R. § 353.301(d),[8] which deals with the

9   restoration of partially-recovered employees to the local commuting area when they are able

10  to return to limited duty, but he does not provide any factual information or nexus to how the

11  Postal Service violated this regulation when it provided Plaintiff a reasonable

12  accommodation that met his medical restrictions on his original postal route. (*Id*. at 1)

13         Plaintiff raises several arguments to avoid summary judgment on his reasonable-

14  accommodation claim, such as: (1) "[t]here would be no undue hardship on the employer to

15  change the manner in which the [Plaintiff's] route would be done," *id*.; (2) that partially

16  recovered employees should be treated the same as other handicapped employees under the

17  Rehabilitation Act[,]" *id*.; and (3) the Postal Service's argument that Plaintiff cannot prove

18  the elements of disability discrimination is "without merit." *Id*. at 2. Plaintiff makes no

19  reference to the factual record to support these arguments. The Plaintiff's Response is devoid

20  of any reference to the factual record of the case and thus cannot sustain his claim of

21  unlawful disability discrimination.

22         Although Plaintiff has taken issue with the statements of Lisa Day, Troy Weber, and

23  one of his own deposition answers, Plaintiff has not disputed Defendant's Statement of Facts.

24  Accordingly, the undisputed facts demonstrate that Plaintiff was provided a reasonable

25

26  _____

27  [8] Section 353.301(d) requires governmental agencies to "make every effort to restore in the local commuting area, according to the circumstances in each case, an individual who

28  has partially recovered from a compensable injury and who is able to return to limited duty."

1   accommodation that allowed him to work as a letter carrier, within his medical restrictions,

2   and with no loss of pay or other benefit. (Doc. 43, DSOF, ¶¶ 32, 45-46) It is undisputed that

3   "Plaintiff never had to do anything that was outside of his medical restrictions." (DSOF, ¶

4   45) The Postal Service is not required to provide Plaintiff the accommodation he requested

5   or preferred. *See UPS Supply Chain Solutions*, 620 F.3d at 1110-11.

6          Additionally, Plaintiff has not alleged any adverse employment action, other than not

7   changing his route back to an entirely driving route which contravenes the Postal Service's

8   policy to establish more green routes. The undisputed facts demonstrate that Plaintiff's route

9   was changed along with several other routes as part of the green route policy. When his

10  medical restrictions prevented him from walking the entire route, the Postal Service allowed

11  Plaintiff to walk the route until he reached his medical restrictions and then deliver the mail

12  by truck for the rest of his tour. Plaintiff was given a route as a letter carrier consistent with

13  his medical restrictions and he was not required to do any postal work beyond his medical

14  restrictions.

15         Plaintiff claims in his Amended Statement of Facts that the Postal Service did not

16  engage in the interactive process, but he does not provide any reference to the record to

17  support the allegation.  In fact, the record reflects the Postal Service engaged in an interactive

18  process to meet the needs of his disability. Plaintiff told his immediate supervisor Duarte

19  about his new, two-hour walking restriction and Duarte allowed Plaintiff to revert to driving

20  his walking route. (DSOF, ¶ 23[9])  Because this accommodation was outside of the Postal

21  Service's policy to establish more green routes, station manager Lisa (Butterworth) Day

22  overruled Duarte, instructed Plaintiff he could not continue to deliver the route as a drive-

23  and-dismount route, but reasonably accommodated Plaintiff by allowing him to keep his

24  _____

25         [9] Plaintiff spoke to his immediate supervisor, Duarte, about the new two-hour walking
26  limit added to his restrictions. (DSOF, ¶¶ 14, 23) Duarte told Plaintiff that he could drive
    Route 3278 as he had done before it was changed to a park-and-loop route, eliminating the
27  majority of walking from the route. (DSOF, ¶ 23) This required Plaintiff to drive a
    right-hand-drive postal truck, instead of the van that has been assigned to him for his park-
28  and-loop route. (*Id.*)

1   familiar route, walk it as designed for two hours, and then deliver mail on an auxiliary route

2   by driving. (DSOF, ¶¶ 16, 25, 29-30) The record reflects that upon learning of Plaintiff's

3   medical restrictions, his direct supervisor and station manager reasonably accommodated

4   Plaintiff's medical restrictions. Plaintiff's reasonable accommodation allowed Plaintiff to

5   work within his medical restrictions, while preserving the Postal Service's policy of

6   designating more green routes, a legitimate business decision.

7          Because it is undisputed that Plaintiff did not have his pay reduced or lose any

8   benefits and continued to do his original job as a letter carrier within his medical restrictions

9   due to a reasonable accommodation, Plaintiff has not demonstrated he suffered an adverse

10  employment action because of his disability. Under Title I of the ADA, a plaintiff must

11  demonstrate he suffered an adverse personnel action which materially affect the terms,

12  conditions, or privileges of his employment. 42 U.S.C. § 2000e-2(a)(1). *See, e.g., Burlington*

13  *N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding in a Title VII case that "a

14  plaintiff must show that a reasonable employee would have found the challenged action

15  materially adverse); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (adopting the

16  definition of adverse employment action propounded in EEOC's Compliance Manual, which

17  interprets an adverse employment action as "any adverse treatment that is based on a

18  retaliatory motive and is reasonably likely to deter the charging party or others from

19  engaging in protected activity."). An adverse employment action does not include "a mere

20  inconvenience or an alteration of job responsibilities." *Medina v. Income Support Div., N.M.*,

21  413 F.3d 1131, 1136 (10th Cir. 2005) (citation omitted). Plaintiff has failed to demonstrate

22  he suffered an adverse employment action by the Postal Service.

23          *Pro se* Plaintiff's Amended Statement of Facts, doc. 52, like his original Statement

24  of Facts, does not comply with Local Rule ("LRCiv") 56.1(a) and (b) in a number of

25  significant ways: 1) it does not set forth "[e]ach material fact . . . in a separately numbered

26  paragraph" or "refer to a specific admissible portion of the record where the fact finds

27  support" in the record; 2) it mixes facts not identified in the record and argument; and 3) it

28  does not set forth "a correspondingly numbered paragraph indicating whether [Plaintiff]

1   disputes [Defendant's] statement of fact set forth in that paragraph and a reference to the
2   specific admissible portion of the record supporting [Plaintiff's] position if the fact is
3   disputed." *See* LRCiv 56.1(a)-(b). Moreover, it is not signed under penalty of perjury so it
4   may not be considered an affidavit of Plaintiff's testimony.

5       Plaintiff's Amended Statement of Facts does not identify any of the numbered
6   paragraphs of Defendant's Statement of Facts as being in dispute. Instead, Plaintiff takes
7   issue with some of the testimonial record in the case, without contradicting the factual
8   accuracy of Defendant's Statement of Facts.

9   **V. Conclusion**

10      Based on the foregoing, Defendant Patrick R. Donahoe, Postmaster General, is
11  entitled to summary judgment as Plaintiff has failed to demonstrate a genuine dispute of
12  material fact.

13      **IT IS ORDERED** that Defendant Patrick R. Donahoe's Motion for Summary
14  Judgment, doc. 42, is **GRANTED**.  The Clerk of Court is kindly directed to enter judgment
15  in favor of Defendant and terminate this action.

16      Dated this 15th day of November, 2013.

17

18  _____

19  Lawrence O. Anderson
    United States Magistrate Judge

20

21

22

23

24

25

26

27

28